(No. 4826)

Henry W. Larson, d/b/a General Insulation Company, Claimant, vs. State of Illinois, Respondent.

*Opinion filed March 26, 1959.*

Martin, Craig, Chester and Sonnenschein, Attorneys for Claimant.

Latham Castle, Attorney General; Lester Slott, Assistant Attorney General, for Respondent.

Fearer, J.

Henry W. Larson, d/b/a General Insulation Company, filed his complaint in two counts in this Court on June 12, 1958, and asked for an award of $12,067.35.

In Count I it is alleged that on or about December 20, 1949, respondent, by and through the Department of Public Works and Buildings, and the Eiswirth Construction and Equipment Company, An Illinois Corporation, as contractor, entered into an agreement, under the terms of which the Eiswirth Construction and Equipment Company, the contractor, agreed to furnish labor and materials to complete work called for in a certain proposal No. 3, as shown on drawings described in the specifications, and entitled "Heating and Plumbing Work, Rehabilitation and Modernization of Main Building—North Unit, Anna State Hospital, Anna, Illinois". This was referred to as contract No. 66220 on the records of the Division of Architecture and Engineering of the Department of Public Works and Buildings.

On or about April 5, 1950, claimant accepted a written proposal, which was submitted by the Eiswirth

Construction and Equipment Company, for him to furnish and install all insulation on the job, in accordance with the plans and specifications (with one exception stated in said written proposal), for the sum of $12,150.00.

Claimant alleges that he entered upon the performance of the work specified in said proposal, furnished all labor and materials called for thereby in a good and workmanlike manner, and that the last item of labor or materials furnished to the job was on or about June 1, 1952.

It is further alleged that claimant made repeated demands upon the Eiswirth Construction and Equipment Company, the contractor, for payments of the amounts due from time to time as the work progressed, and for final payment upon completion of his work, but that no payments were made or received from the contractor, in accordance with the agreement that he had relative to furnishing labor and material. After allowing all just credits and setoffs there was due on and after June 1, 1952, and there is now due from the Eiswirth Construction and Equipment Company, the sum of $12,067.35.

From time to time as the various amounts became due under said subcontract, claimant notified the Division of Architecture and Engineering in writing.

It further appears from the complaint filed herein that other subcontractors of the Eiswirth Construction and Equipment Company had notified the Division of their respective claims, but, in spite of this, the Division continued to certify payments to the contractor retaining only 15% as provided for by the contract. Various payments were made to the contractor by respondent in the amounts certified up to and including July 12, 1951, and

on that date the unpaid balance due under the contract amounted to $63,285.86.

Prior to January 24, 1952, the Division had received notice of claims by subcontractors of the said Eiswirth Construction and Equipment Company for payments due for labor and materials furnished to the job in the aggregate amount of $67,211.50; and, as of that date, respondent, acting by and through its Division, had full knowledge that the unpaid balance due under the contract being retained by respondent would be insufficient to pay all of such claims, if the same should be proven valid.

Claimant alleges on information and belief, and states the fact to be that the Eiswirth Construction and Equipment Company, the contractor, was on and after July 31, 1952 insolvent, and had been certified by the Secretary of State for involuntary dissolution.

A surety bond had been posted by the Continental Casualty Company under said contract. This was a performance bond executed by the contractor as principal, and the surety company as surety in favor of respondent, and by the terms thereof it was obligated to complete the job and settle all claims of record in the office of the Division. It appears that after July 31, 1952 the Division made claim against the surety company on said performance bond.

On or about August 25, 1952, the surety company notified respondent that it waived its option to complete the contract. It authorized respondent to cause the work to be completed, and to pay for such completion out of the balance remaining unpaid on said contract.

It further appears from the complaint filed herein that the surety company further notified respondent of its intentions regarding the claims of subcontractors as follows:

"As to the claims of unpaid suppliers, these are receiving our attention, and the surety will discharge its obligation to such claimants, in accordance with the laws and statutes pertaining thereto."

In compliance with Chap. 82, Sec. 23, Ill. Rev. Stats.; and, Chap. 29, Sec. 16, claimant did on or about September 17, 1952, i.e., within 180 days after the date of the last item of work, or the furnishing of the last item of materials, file in the office of the Director of the Department of Public Works and Buildings a verified notice or statement of his claim.

On or about October 21, 1952, respondent was notified in writing of the desire of claimant to comply with the statutes of the State of Illinois. Claimant called respondent's attention to the provisions of Chap. 29, Sec. 16, Ill. Rev. Stats., requiring all actions on the bonds of contractors with the State of Illinois to be brought within six months after the acceptance by the State of the building project or work, and requested respondent to advise claimant of such acceptance when, and if, the same should be made.

On or about October 15, 1952, the Attorney General of the State of Illinois advised the Director of the Department of Public Works and Buildings that the only amount, which could be subject to a lien in favor of the subcontractors of the Eiswirth Construction and Equipment Company, who had supplied labor or material to the job, was the unpaid balance due under the contract less the cost of completing the job, and advised the Director to do nothing with respect to the payment of the claims of such subcontractors until all of the work contemplated by the contract had been completed and paid for.

It appears from the complaint that the job was finally approved and accepted by respondent on or about

August 23, 1953, and that the unpaid balance due under the contract on that date amounted to $35,203.13. The contractor, having completed the job, was paid in full.

Claimant alleges that he was without any source of knowledge or information concerning the status of the job from time to time, except such as was supplied to him by respondent acting by and through the aforesaid Division. This fact was known or ought to have been known by said Division.

The appropriation by the General Assembly for the payment of the contract was allowed to lapse on or about October 1, 1953, and no subsequent appropriation was made, so that funds would be available to pay the amount due claimant for labor and materials, which he supplied for the job.

Claimant contends that respondent, acting by and through said Division, negligently or wilfully committed one of more of the following acts:

a. Falsely represented to claimant that there was a sufficient balance then payable under the contract to pay claimant's claim in full.

b. Falsely represented to claimant that his claim could and would be paid without the necessity of his filing any legal action or suit of any kind.

c. Falsely represented to claimant that the only result of a suit by him to perfect a lien on the public funds payable under the contract would be to complicate and delay the payment of his claim.

d. Failed or refused to disclose the fact that the job was accepted on August 23, 1953, although repeatedly requested to do so by claimant.

e. Made statements and representations, which were calculated to and did lead claimant reasonably to believe

that the job had not been accepted on August 23, 1953, and that the job would not be accepted until claimant was notified.

As a direct and proximate result of the foregoing, claimant was induced to and did refrain from filing any suit either to perfect a lien on public funds under the contract, or to recover against the surety company on the Eiswirth Construction and Equipment Company's bond until after the respective periods, during which such action could have been brought, had expired.

Count II repeats and realleges the first twenty-one paragraphs of Count I, as though realleged as paragraphs 1 to 21 in Count II.

In this count claimant contends that, on or about September, 1952, and on or about July, 1953, claimant and respondent, acting by and through said Division, entered into an oral agreement under the terms of which claimant agreed to refrain from filing any suit or proceeding to perfect a lien upon the public funds payable under the contract; and, that respondent agreed, in consideration therefor, to inform claimant of the date of the acceptance of the job by respondent in a sufficient time to enable claimant to commence an action to recover against the surety company on the bond executed by the Eiswirth Construction and Equipment Company, the contractor.

It is further alleged that claimant has fully performed all acts and things required of him by said agreement.

Claimant is predicating this count upon a breach of contract.

The record in this case consists of the following:

Complaint
Departmental Report

Joint motion of claimant and respondent for leave to waive filing of briefs

Order of the Chief Justice granting the joint motion of claimant and respondent for leave to waive filing of briefs

Transcript of evidence

Commissioner's Report

A Departmental Report was filed and made a part of the evidence, and was accepted by the Commissioner, who heard this case. In the Departmental Report it is set forth that the Department was notified that the claimant was to do certain portions of the work as a subcontractor; that he furnished labor and materials and properly completed the project; that throughout the progress of the same claimant repeatedly advised the Division of Architecture and Engineering, Department of Public Works and Buildings, that the contractor, the Eiswirth Construction and Equipment Company, owed certain sums of money to claimant; and, that the records of the Division indicate that it was notified both in writing and by telephone communications. Claimant was notified of the insolvency of the contractor, and further that the surety company, as surety on the performance bond, would be called upon to complete the project. The Continental Casualty Company provided notice to claimant and others of their method of processing claims. However, due to a claim of technicality, and, even after being assured by the Continental Casualty Company and the Division of Architecture and Engineering, the Continental Casualty Company rejected claimant's claim.

The project was completed by claimant to the entire satisfaction of the State of Illinois, and was accepted by the State through the Division of Architecture and Engineering on or about August 23, 1953. It is the feeling of the Division of Architecture and Engineering that claimant has fulfilled his obligation to the State of Illi-

nois; that the same was done in good faith; and, that claimant is entitled to payment.

At the hearing on January 28, 1959, the only witness testifying in this case was Henry W. Larson, claimant, who testified to all the material matters set forth in the complaint.

Respondent filed a Departmental Report only, and did not make any attempt to deny or resist the allowance of the claim. In fact, the Departmental Report indicates that claimant has performed his said contract satisfactorily, furnished the materials and labor set forth, and should recover for labor and materials furnished to respondent at the Anna State Hospital, Anna, Illinois.

An award is, therefore, made to claimant by this Court in the amount of $12,067.35.